[786 NYS2d 461]

JEFFREY H. MICHAELIS, M.D., Appellant, v DENNIS J. GRAZIANO, as Director of the Office of Professional Medical Conduct, et al., Respondents.

First Department, December 14, 2004

APPEARANCES OF COUNSEL

*Rende, Ryan & Downes, LLP*, White Plains (*Roland T. Koke* of counsel), for appellant.

*Eliot Spitzer, Attorney General*, New York City (*Raymond J. Foley* and *Michelle Aronowitz* of counsel), for respondents.

### OPINION OF THE COURT

FRIEDMAN, J.

Respondent Dennis J. Graziano, Director of the Office of Professional Medical Conduct (OPMC), issued an order directing that a comprehensive medical review (CMR) be conducted of the patient and office records of petitioner, a physician licensed to practice medicine in the State of New York. Petitioner commenced this CPLR article 78 proceeding seeking to prevent the CMR. At issue on this appeal is Supreme Court's order dismissing the proceeding and granting respondents' cross motion to require petitioner to cooperate with the CMR.

Public Health Law § 230 (10) (a) (iv) expressly authorizes respondent to conduct a CMR of a licensee's records under specified circumstances. This statute sets forth no requirement that a CMR be accompanied by a subpoena, and neither do any of the decisions cited by petitioner or by the dissent. OPMC's submissions establish that it has satisfied all procedural prerequisites to a CMR of petitioner's patient and office records, and that its prior investigation has yielded sufficient factual grounds for conducting such an inquiry. Accordingly, Supreme Court correctly dismissed the petition and ordered petitioner, pursuant to Public Health Law § 230 (10) (*o*), to fulfill his statutory obligation to "cooperate with the investigation" (Public Health Law § 230 [10] [a] [iv]).

The relevant facts are simply stated. According to the affidavit of Patricia A. Cooney, OPMC's Regional Program Director, OPMC commenced an investigation of petitioner on October 19, 2000, based on a complaint that had been received about the medical care he had rendered. After interviewing petitioner,

OPMC requested, on June 20, 2002, that an investigation committee (the Committee) of the Board for Professional Medical Conduct (the Board) authorize OPMC to conduct a CMR of petitioner's patient records, and the Committee granted such authorization. Accordingly, the Director of OPMC issued a "Director's Order of Comprehensive Review of Patient and/or Office Records," dated June 20, 2002 (the CMR Order). The CMR Order states that the Director has determined, after consultation with the Committee, that "evidence exists of a pattern of inappropriate medical practice" by petitioner, which is one of the grounds for a CMR set forth in Public Health Law § 230 (10) (a) (iv) (A). On that basis, the CMR Order provides, pursuant to Public Health Law § 230 (10) (a) (iv), that "a comprehensive review of patient records of the licensee and such office records as are related to such determination shall be conducted," and that petitioner "shall cooperate with the investigation."

The CMR Order was transmitted to petitioner under cover of a letter dated August 9, 2002, which advised petitioner that an OPMC staff person would come to his office, on a date to be scheduled, to select a number of patient records and relevant office records for copying. The letter further advised petitioner that failure to comply with the CMR Order would constitute professional misconduct within the meaning of Education Law § 6530 (15). Thereafter, according to Ms. Cooney, OPMC staff and petitioner's office manager agreed that the CMR would be conducted on September 18, 2002. OPMC subsequently consented to postpone the CMR to a date to be agreed upon, based on the representation that petitioner's wife had been diagnosed with a brain tumor. One week after OPMC agreed to the postponement, petitioner commenced this proceeding seeking to annul the CMR Order.

The foregoing uncontroverted facts establish that OPMC has satisfied the only procedural prerequisite for conducting a CMR, which, under Public Health Law § 230 (10) (a) (iv), is a determination by the Director of OPMC, made "after consultation with an investigation committee," that grounds for such a review, as provided by the statute, exist. Public Health Law § 230 (10) (a) (iv) provides in pertinent part:

> "10. Professional misconduct proceedings shall consist of:
>
> "(a) Investigation . . .

"(iv) . . . *If the director* [of OPMC] *determines after consultation with an investigation committee* [of the Board] *that*: (A) *evidence exists of* a single incident of negligence or incompetence, *a pattern of inappropriate* prescribing or *medical practice*, or impairment by drugs, alcohol, physical or mental disability; (B) a recommendation was made by a county medical society or the medical society of the state of New York that warrants further review; or (C) the facts underlying a verdict in a medical malpractice action warrant further review, *the director, in addition to the authority set forth in this section, shall be authorized to conduct a comprehensive review of patient records of the licensee and such office records of the licensee as are related to said determination.* The licensee shall cooperate with the investigation and willful failure to cooperate in a substantial or material respect may result in an enforcement proceeding pursuant to subparagraph (ii) of paragraph (*o*) of this subdivision." (Emphasis added.)

Public Health Law § 230 (10) (a) (iv) makes no mention of any requirement that an order for a CMR be accompanied by a subpoena issued by the Executive Secretary of the Board pursuant to Public Health Law § 230 (10) (k). Nonetheless, petitioner argues, and the dissent agrees, that the subject CMR should be annulled on the ground that such a requirement should somehow be inferred to exist. This argument finds no support in the language of the statute. Nothing in section 230 indicates a connection between the provision empowering the Director of OPMC, after consultation with an investigation committee, to order a CMR of the records of a licensee under investigation (subd [10], para [a], subpara [iv]), on the one hand, and, on the other hand, the provision empowering a different official (the Board's Executive Secretary, with the approval of a committee on professional conduct) to issue subpoenas to "persons" believed to have relevant documents or information (subd [10], para [k]). Petitioner and the dissent take two distinct procedures, created by separate statutory provisions for exercise by different officials, and collapse them into one.

Indeed, the construction of the statute advocated by petitioner and the dissent would render the CMR provision of section 230 (10) (a) (iv) meaningless and redundant. Specifically, under their construction, the CMR provision of section 230 (10) (a) (iv), originally enacted in 1986, does not grant the Director of

OPMC any power independent of the broader subpoena power that the Legislature separately—*and almost a decade earlier*—granted to the Board's Executive Secretary in section 230 (10) (k), originally enacted in 1977.[1] Stated otherwise, petitioner and the dissent would leave the Director of OPMC with no power to conduct a CMR under paragraph (a) (iv) that can be exercised independently of the Executive Secretary's preexisting subpoena power under paragraph (k). Thus, petitioner and the dissent would make a nullity of the CMR procedure, which the Legislature must be presumed to have intended to add something new to the statutory scheme for oversight of the medical profession. "Such a construction, 'resulting in the nullification of one part of the [statute] by another,' is impermissible" (*Rangolan v County of Nassau*, 96 NY2d 42, 48 [2001], quoting *Matter of Albano v Kirby*, 36 NY2d 526, 530 [1975]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 98, at 223).

To be clear, our objection to the position of petitioner and the dissent is not that it would confer unauthorized subpoena power on the Director of OPMC. Rather, our objection is that their position—in addition to its lack of a basis in the statutory language—would render the power of the Director of OPMC to conduct a CMR completely dependent on the broader, and preexisting, subpoena power of the Executive Secretary of the Board. This would make the Director's CMR power superfluous.

The position adopted by petitioner and the dissent is contrary to a prior decision of this Court, in which we enforced an order for a CMR of the same kind that is at issue here, and did so notwithstanding that no subpoena had been issued. In *Tanner v Dr. A.* (228 AD2d 238 [1996]), we unanimously affirmed an order granting OPMC's application, pursuant to Public Health Law § 230 (10) (*o*), to enforce the Director's order for a CMR of a physician's patient records and office records. A review of the *Tanner* record reveals that the CMR order in that case was not accompanied by any subpoena issued pursuant to section 230 (10) (k); thus, *Tanner* is inconsistent with the position of petitioner and the dissent.[2] To like effect, two recent decisions of the Third Department have affirmed administrative determi-

---

**1.** Section 230 (10) (k), which grants subpoena power to the Board's Executive Director, was originally enacted by Laws of 1977 (ch 773, § 1). The CMR procedure set forth in section 230 (10) (a) (iv) was originally enacted by Laws of 1986 (ch 266, § 24).

**2.** Although the *Tanner* decision at one point refers to the instrument sought to be enforced as a "subpoena" (228 AD2d at 239), a review of the rec-

nations holding physicians guilty of professional misconduct, in violation of Education Law § 6530 (15), for refusing to comply with CMR orders (*see Matter of Ostad v New York State Dept. of Health*, 309 AD2d 989 [2003]; *Matter of Daniels v Novello*, 306 AD2d 644 [2003], *lv denied* 100 NY2d 514 [2003]). In neither *Ostad* nor *Daniels* is there any indication that the subject CMR order was accompanied by a subpoena.

The view that a CMR order must be accompanied by a subpoena is not supported by any authority cited by petitioner or the dissent. In particular, the issue of the enforceability of a CMR order was not presented to the Court of Appeals in *Matter of Shankman v Axelrod* (73 NY2d 203 [1989]). At issue in *Shankman* was the validity of an "inspection warrant" for the seizure of a physician's patient records. OPMC had obtained the warrant upon ex parte application to Supreme Court and, apparently without giving the physician advance notice, executed the warrant one night at 10:00 P.M. The *Shankman* court affirmed the vacatur of the ex parte warrant on the ground that the Public Health Law did not grant OPMC, either expressly or by implication, the power to obtain such a warrant. There was no CMR order at issue in *Shankman*; indeed, the *Shankman* decision does not even mention the CMR procedure or the statutory provision (§ 230 [10] [a]) establishing that procedure.

We readily acknowledge the principle for which *Shankman* stands, namely, that "[a]n administrative agency is clothed with [only] those powers expressly conferred by its authorizing statute, as well as those required by necessary implication" (73 NY2d at 206 [internal quotation marks, emphasis, and citations omitted]). That principle, however, does not bar enforcement of the CMR order at issue here, because the relevant authorizing statute does "expressly confer[ ]" on OPMC the power to issue a judicially enforceable order for a CMR, and nothing in the statute makes the exercise of that power conditional on the issuance of a subpoena. Since the *Shankman* case did not involve the CMR procedure, and the *Shankman* decision does not even mention that procedure or the statutory language creating it, *Shankman* does not control this case.

We recognize that some may be concerned that the CMR procedure created by Public Health Law § 230 (10) (a) (iv) will deprive a licensee of due process unless the CMR order is ac-

ord of that appeal confirms that, as stated in the decision's decretal paragraph, the instrument at issue was an order for a CMR issued by the Director of OPMC, not a subpoena issued pursuant to section 230 (10) (k).

companied by a subpoena. Any such concern is unfounded. Subparagraph (iv) states that the licensee's failure to cooperate with a CMR "may result in an enforcement proceeding pursuant to . . . paragraph (*o*) of this subdivision." The referenced paragraph (*o*) (Public Health Law § 230 [10] [*o*]) provides that, in the event the licensee

> "has refused to comply with the director's [CMR] order, the director may apply to a justice of the supreme court, in writing, on notice to the licensee, for a court order to compel compliance with the director's order. The court shall not grant the application unless it finds that (i) there was a reasonable basis for issuance of the director's order and (ii) there is reasonable cause to believe that the records sought are relevant to the director's order. The court may deny the application or grant the application in whole or in part."

The enforcement procedure set forth in paragraph (*o*), which OPMC used in *Tanner v Dr. A.* (*supra*) and in the instant case,[3] demonstrates that the CMR procedure, even without a subpoena requirement, does not expose licensees to the threat that OPMC staff will barge into their offices and seize their records without prior notice, as apparently occurred in *Shankman*. Rather, in the event the licensee refuses to cooperate with a CMR, the statute requires OPMC to seek judicial enforcement of the CMR order on written notice to the licensee, exactly as OPMC has done here. In such an enforcement proceeding, it is OPMC's burden to demonstrate a reasonable basis for the order and reasonable cause to believe that the records sought are relevant. Thus, there is no need for us to fashion a subpoena requirement not found in the statute in order to safeguard the due process rights of medical licensees. While petitioner and the dissent would read a subpoena requirement into the CMR procedure in order to "afford[ ] a physician . . . an opportunity to be heard before turning over the requested records," the fact is that the CMR procedure, as enacted by the Legislature, provides that opportunity without any need to engraft a subpoena requirement.

Since OPMC properly sought access to petitioner's records on the basis of the CMR Order duly issued by its Director pursuant

---

**3.** In this case, respondents cross-moved in Supreme Court for relief pursuant to paragraph (*o*), and the order appealed from granted such relief, directing petitioner "to turn over all patient records and office records requested by respondent and [to] cooperate with respondent's investigation."

to statutory authority, it was entirely proper for respondents to make an in camera submission of the factual material supporting the CMR Order, which material is subject to the confidentiality requirements of Public Health Law § 230 (9), (10) (a) (v) and (11) (a) (*see Tanner v Dr. A., supra*; *see also Matter of Levin v Murawski*, 59 NY2d 35, 42 n 4 [1983]; *Matter of Levin v Guest*, 112 AD2d 830, 831-832 [1985], *affd* 67 NY2d 629 [1986], *cert denied* 476 US 1171 [1986]). Having reviewed respondents' in camera submission, we are satisfied that sufficient grounds exist to support the issuance of the CMR Order.

Finally, while it is true that subparagraph (iii) of Public Health Law § 230 (10) (a) requires that a licensee under investigation "be given written notice of issues identified subsequent to the interview" conducted pursuant to that subparagraph (petitioner was interviewed in November 2001), nothing in the statute makes the giving of such "written notice of issues" a prerequisite to conducting a CMR, nor is OPMC required to give such written notice within a specified time frame. Indeed, OPMC seeks to conduct the CMR for the specific purpose of further defining the issues it seeks to resolve. Accordingly, the dissent's remark that "the target physician is entitled to written notice of the issues identified for investigation" is not pertinent to OPMC's authority to review records pursuant to a CMR.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Lewis Bart Stone, J.), entered March 10, 2003, which denied and dismissed the petition seeking to annul respondent Graziano's order for a comprehensive medical review of petitioner's patient and office records, and granted respondents' cross motion for an order directing petitioner to cooperate with such comprehensive medical review, should be affirmed, without costs.

LERNER, J. (dissenting). I respectfully dissent and would reverse the order and judgment of the IAS court.

It is well settled that an administrative agency is clothed only with those powers expressly conferred by its authorizing statute (*see Matter of Shankman v Axelrod*, 73 NY2d 203, 206 [1989]; *Matter of Memorial Hosp. v Axelrod*, 68 NY2d 958, 960 [1986]). In the instant matter, although the Director of the Office of Professional Medical Conduct (OPMC), which is the investigative branch of the State Department of Health, has the express authority to conduct a comprehensive medical review (CMR)

pursuant to Public Health Law § 230 (10) (a) (iv), this section does not expressly indicate the investigative process by which these records are to be made available or the manner in which they are to be obtained.

Public Health Law § 230 (10) (k), however, expressly provides for the issuance of subpoenas by the Executive Secretary of the OPMC with the approval of a committee composed of two physicians and one lay member. Contrary to the majority's contention, our construction of Public Health Law § 230 (10) (a) (iv) would not grant the Director of OPMC any power independent of the broader subpoena power afforded to the Executive Secretary under Public Health Law § 230 (10) (k). Nowhere is it suggested that the Director, rather than the Executive Secretary, formally issue the requisite subpoena. Nor is it proposed that the powers of the Director be subservient to those of the Executive Secretary. I merely conclude that OPMC issue the subpoena as provided for within the framework of section 230 (*see Shankman*, 73 NY2d at 207).

Insofar as it deals with the manner in which a physician's patient records may be obtained in the course of an investigation, *Shankman* is highly instructive. There, the Court of Appeals directly dealt with the powers of the OPMC, both express and implied, in seizing a physician's patient records during a professional misconduct investigation. The Court concluded that OPMC does not have the implied power to obtain an ex parte "inspection" warrant to seize such patient records in light of OPMC's express statutory authority to subpoena such records within the statutory scheme of Public Health Law § 230 (*Shankman*, 73 NY2d at 207).

Although I readily agree with the majority's general contention that OPMC may seek to enforce a CMR order against a physician (*see Tanner v Dr. A.*, 228 AD2d 238 [1996]; *see also Matter of Ostad v New York State Dept. of Health*, 309 AD2d 989 [2003]; *Matter of Daniels v Novello*, 306 AD2d 644 [2003], *lv denied* 100 NY2d 514 [2003]), I find that an improperly promulgated CMR order, which violates statutory procedures, may not be so enforced. *Tanner, Ostad* and *Daniels* each specifically dealt with the OPMC's statutory right to conduct a CMR and to enforce its resulting order. These cases cited by the majority, however, do not address the specific issue here of whether the CMR order complied with statutory procedures as provided within the framework of Public Health Law § 230. Since the precise focus in the instant matter is the manner in which the

OPMC gathers evidence, and not its power to enforce its CMR, I find *Tanner, Ostad* and *Daniels* not to be on point.

Notably, in *Tanner*, this Court upheld the grant of a motion to direct a physician to comply with a CMR and rejected various due process arguments raised by the physician as to the investigative process. A subpoena, however, had been issued in *Tanner* (228 AD2d at 239), unlike in the instant matter, thus affording the physician the opportunity to invoke CPLR 2304.

Indeed, once a subpoena is formally issued by the Executive Secretary of OPMC, the physician under investigation may move to quash it pursuant to CPLR 2304. The subpoena will be upheld upon a minimum threshold showing of a good-faith basis for the investigation (*see Matter of Levin v Murawski*, 59 NY2d 35, 41 [1983]), thus affording the physician notice of the pending charges and an opportunity to be heard before turning over the requested records to the OPMC (*see Shankman*, 73 NY2d at 207).

In the instant matter, the CMR order, which was not accompanied by a subpoena, directed petitioner in a blunderbuss manner to open all of his patient records for review and was without limitation as to the type or number of files subject to review. I find that the IAS court erred in concluding that the OPMC's authority to conduct a CMR endowed it with another, more intrusive investigative power apart from its statutory subpoena power. This additional, implied power to obtain patient records in the manner described above is not expressly articulated under the Public Health Law's statutory scheme. Further, I find no indication in the Public Health Law from which such ancillary power may be fairly implied for OPMC to fulfill its statutory obligations (*id.*).

In view of this express subpoena power, I find that respondents have failed to justify the necessity of an in camera review of the requested documents at this point in their investigation, and that the target physician is entitled to written notice of the issues identified for investigation (Public Health Law § 230 [10] [a] [iii]; *see Shankman* at 207). Bare assertions that the requested documents may be altered or destroyed, thus impeding the investigation, are insufficient (*see id.*).

In light of the foregoing, I would reverse the IAS court's order and judgment which granted respondents' cross motion for an order directing petitioner to comply with a comprehensive medical review order and denied petitioner's application to annul the CMR order.

ANDRIAS and SULLIVAN, JJ., concur with FRIEDMAN, J.; BUCK-
LEY, P.J., and LERNER, J., dissent in a separate opinion by LER-
NER, J.

Order and judgment (one paper), Supreme Court, New York
County, entered March 10, 2003, affirmed, without costs.